UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NOVAPLAST CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**INPLANT, LLC, and**<br>**PROXIMATE CONCEPTS, LLC**<br><br>Defendants. | Civ. No. 20-7396 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff NovaPlast Corporation ("NovaPlast") initiated this patent infringement action against defendants Inplant, LLC ("Inplant") and Proximate Concepts, LLC ("Proximate"). Defendants move to dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons provided herein, I will grant Defendants' motion.

**I.    Summary[1]**

The facts alleged in the Complaint are accepted as true for purposes of this motion. NovaPlast, a company organized and existing under the laws of Florida, is in the medical device business. (Compl. ¶¶1-2). By way of assignment, NovaPlast is the owner of U.S. Patent No. 10,104,213 ("the '213 Patent" or "the Patent-In-Suit"), entitled "Prosthetic implant delivery device and method." (Compl. ¶16, Ex. 3). The '213 Patent was filed on December 29, 2015

---

[1]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"----" = ------ (DE ??)

1

and issued on October 23, 2018. (Compl. ¶17, Ex. 3). The Patent contains the following claims:

> **1.** A delivery system adapted to facilitate insertion of a prosthetic implant through a surgical opening, the system comprising:
>
> a flexible elongated member defining a proximal end and a distal end, the proximal end, formed opposite the distal end and defining a closed end, the distal end defining a longitudinal opening;
>
> the distal end including a first longitudinal edge and a second longitudinal edge, the first longitudinal edge and second longitudinal edge further defining the longitudinal opening, at least one first fastener formed on the elongated member adjacent the first longitudinal edge, and a second fastener formed on the elongated member adjacent the second longitudinal edge;
>
> the second fastener matingly engage with the at least first fastener to close the longitudinal opening, whereby a predetermined size distal opening is formed based on the engagement of the second listener with the at least one first fastener, the distal opening sized to allow the prosthetic implant to be urged therethrough.
>
> **2.** The delivery system of claim **1**, wherein a plurality of first fasteners is formed on the elongated member adjacent the first longitudinal edge.
>
> **3.** The delivery system of claim **2**, wherein the mesh material defines a graded mesh, wherein the distal end portion is less expandable than the proximal end portion.
>
> **4.** The delivery system of claim **1**, wherein the flexible elongated member defines an expandable mesh material.
>
> **5.** The delivery system of claim **1**, each of the at least one first, fastener further comprising a channel, the second fastener defining a shoulder, the shoulder adapted to be received within and secured with the channel of at least one of the first fasteners.
>
> **6.** The delivery system of claim **1**, each of the at least one first fastener further comprising at least one receiving slot, the second fastener defining at least one tab, the at least one tab adapted to be inserted into and secured with the at least one receiving slot.

> **7.** The delivery system of claim **1**, each of the at least one first fastener comprising at least one attaching unit, the second fastener defining at least one closing unit, the at least one closing unit adapted to be inserted into and secured with the at least one attaching unit.
>
> **8.** The delivery system of claim **1**, the at least one first fasteners defining a proximal end and a distal end; the second fastener defining a proximal end and a distal end, the proximal end of the at least one first fasteners being a first distance from the proximal end of the second fastener, the distal end of the at least one first fasteners being a second distance from the distal end of the second fastener, the first distance being greater than the second distance.

(Compl. ¶17, Ex. 3 at 36).

Inplant is a company organized and existing under the laws of New Jersey and "is in the business of manufacturing and selling medical devices, including devices related to plastic surgery procedures." (Compl. ¶¶3-4). Inplant's principal place of business is at 1566 Lemoine Avenue, Fort Lee, New Jersey 07024. (Compl. ¶3). The Complaint avers that Inplant "has manufactured, sold, or offered for sale an implant funnel for breast augmentation surgery procedures" ("Accused Product 1"), displayed in Exhibit 1, and "is manufacturing selling, or offering for sale an implant funnel for breast augmentation surgery procedures" ("Accused Product 2"), displayed in Exhibit 2. (Compl. ¶¶5-6, Ex. 1-2).

Proximate is a company organized and existing under the laws of New Jersey. Its principal place of business is located at 1566 Lemoine Avenue, Fort Lee, New Jersey 07024. (Compl. ¶7). According to the Complaint, Proximate "is in the business of manufacturing and selling medical devices, including devices related to plastic surgery procedures," and "has manufactured, sold, or offered for sale the Accused Products through the United States and in New Jersey." (Compl. ¶¶8-9).

Accused Product 1 was first made available to the public after December 29, 2015. (Compl. ¶19). With respect to that product, Defendants own U.S. Patent No. 9,925,028 ("the '028 Patent"), entitled "device for the delivery of a

3

prosthetic implant and method of use thereof." (Compl. ¶20). Sometime thereafter, NovaPlast's counsel mailed Defendants a cease and desist letter regarding Accused Product 1. (Compl. ¶21). Defendants then created and began to sell Accused Product 2, which Defendants marked with the '028 Patent and U.S. Patent No. 10,575,936 ("the '936 Patent"), entitled "device for the delivery of a prosthetic implant and method of use thereof." (Compl. ¶¶21-22). The '028 Patent and the '036 Patent are assigned to Proximate. (Compl. ¶23). Both of the Accused Products are "part of a delivery system adapted to facilitate the insertion of a prosthetic implant through a surgical opening." (Compl. ¶25).

The Complaint alleges that "[t]he '213 patent is a dominant patent to the '028 Patent and the '936 Patent." (Compl. ¶24). Regarding Accused Product 1, the Complaint avers that it "includes a flexible elongated member defining a proximal end and a distal end, where the proximal end defines a closed end, and the distal end defines longitudinal opening." (Compl. ¶26). Further:

> The distal end of Accused Product 1 includes a first longitudinal edge and a second longitudinal edge and at least one first fastener formed on the elongated member adjacent the first longitudinal edge, and a second fastener formed on the elongated member adjacent the second longitudinal edge; the second fastener matingly engages with the at least first fastener to close the longitudinal opening, whereby a predetermined size distal opening is formed based on the engagement of the second listener with the at least one first fastener, the distal opening sized to allow the prosthetic implant to be urged therethrough.

(Am. Compl. ¶27).

Accused Product 2 "includes a flexible elongated member defining a proximal end and a distal end where the proximal end defines a closed end," and "the distal end is manufactured and sold with a closed distal end portion with a perforation to enable removal of the closed distal end portion to define a longitudinal opening to be suitable for use." (Compl. ¶29). When Accused Product 2's closed distal end with perforation is removed, the distal end "includes a first longitudinal edge and a section longitudinal edge and at least

4

one first fastener formed on the elongated member adjacent the first longitudinal edge, and a second fastener formed on the elongated member adjacent the second longitudinal edge." (Compl. ¶30). In addition,

> the second fastener matingly engages with the at least first fastener to close the longitudinal opening, whereby a predetermined size distal opening is formed based on the engagement of the second listener with the at least one first fastener, the distal opening sized to allow the prosthetic implant to be urged therethrough.

(*Id.*). The '936 Patent claims that Accused Product 1 is "[a] surgical device for assisting in the placement of a prosthetic implant within a surgical pocket of a patient." (Compl. ¶31 (alteration in original)). The '936 Patent also claims that the surgical device comprises the following:

> [a] sheet of polymer shaped in the form of a conical frustum in which a proximal end of the frustum is sealed and a distal end of the frustum is open, the frustum having an elongated slit extending from the distal end toward the proximal end and further having a single opening formed by the distal opening and the elongated slit, the opening configured to accept the prosthetic implant into an interior cavity of the frustum.

(*Id.* (alteration in original)). The instructions and intended use for Accused Product 2 direct users "to remove the perforated distal end to create a distal opening sized to allow the prosthetic implant to be urged therethrough." (Compl. ¶¶33-35).

The Complaint asserts that the United States Patent and Trademark Office ("PTO") issued a Notice of Allowance prior to the issuance of the '213 Patent. (Compl. ¶38). On September 26, 2018, NovaPlast mailed Mr. Paul Rosenberg, the principal of both Inplant and Proximate, "a letter regarding the imminent issuance of the '213 Patent and copies of the patent claims that were to issue." (Compl. ¶39). In October 2018, "Jeffery Weinzweig of NovaPlast provided a representative of Inplant with a copy of [that] letter." (Compl. ¶40). Therefore, the Complaint alleges upon information and belief, Defendants had constructive or actual knowledge of the '213 Patent. (Compl. ¶41). "Prior to manufacturing, selling, and offering for sale Accused Product 2, Defendants

5

were aware of the '213 Patent" and "were aware that NovaPlast was of the opinion that Accused Product 2 infringed on one or more claims of the '213 Patent." (Compl. ¶¶ 42-43).

The Complaint asserts two counts of patent infringement.

Count I alleges infringement of the '213 Patent by Accused Product 1. (Compl. ¶¶44-48). With respect to that product, the Complaint asserts the following: (1) "Accused Product 1 meets the limitations of one or more claims of the '213 Patent either literally or under the doctrine of equivalents"; (2) "Defendants, either individually or collectively, by way of their manufacturing, sale, and offering for sale of Accused Product 1 have directly infringed on the '213 Patent"; (3) "Defendants' infringement of the '213 Patent is willful"; and (4) "NovaPlast has suffered and will continue to suffer damages in an amount yet to be determined and irreparable injury as a result of Defendants' infringement of the '213 Patent." (Compl. ¶¶45-48).

Count II alleges patent infringement of the '213 Patent by Accused Product 2. (Compl. ¶¶49-54). With respect to that product, the Complaint asserts the following: (1) "Accused Product 2 when configured for use meets the limitations of one or more of the '213 Patent either literally or under the doctrine of equivalents"; (2) "Defendants, either individually or collectively, by way of their manufacturing, sale, and offering for sale of Accused Product 2 have directly infringed on the '213 Patent, and continue to do so"; (3) "Defendants, either individually or collectively, by way of instructions for use of Accused Product 2, have directly infringed the '219 Patent by knowingly inducing others to directly infringe one or more claims of the '213 Patent, and continue to do so"; (4) "Defendants' direct and indirect infringement of the '213 Patent is willful"; and (5) "NovaPlast has suffered and will continue to suffer damages in an amount yet to be determined and irreparable injury as a result of Defendants' infringement of the '213 Patent." (Compl. ¶¶50-54).

The Complaint seeks damages and costs, as well as declaratory and injunctive relief.

## II. Discussion

### a. Legal standard

Generally, district courts adjudicating patent cases apply the law of the Federal Circuit, where the matter "is intimately involved with the substance of patent laws." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012). However, the question of whether to grant a Rule 12(b)(6) motion, "is a purely procedural question not pertaining to patent law," to which the Federal Circuit applies the rule of the regional circuit. *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000); *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018) ("We review procedural issues, including the grant of a motion to dismiss, according to the law of the respective regional circuit.")

In *Robern, Inc. v. Glasscrafters, Inc.*, this Court held as a matter of first impression that the *Iqbal/Twombly* standard applies to complaints alleging patent infringement after the abrogation of Federal Rule of Civil Procedure 84 and patent pleading Form 18. 206 F. Supp. 3d 1005, 1010 (D.N.J. 2016). *Robern* noted that both the Supreme Court of the United States and the United States Court of Appeals for the Third Circuit have held that the *Iqbal/Twombly* pleading standard applies in all civil cases and, since "the abrogation of Rule 84 and Form 18, there is no longer any credible conflict between Supreme Court precedent and Form 18." *Id.*

Those standards are familiar and well-established. Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face."

*Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In that regard, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court

8

may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). As pertinent here, I may consider the cited patents, which are the very foundation of the complaint.

### b. Direct Patent Infringement

A claim of direct patent infringement is governed by 35 U.S.C. § 271(a), which provides: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)

Prior to the abrogation of Rule 84, Form 18 required only that patent infringement complaints assert the following:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent"; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*Robern*, 206 F. Supp. 3d at 1008 (alteration in original) (quoting *K–Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013)). The now-applicable pleading standard of *Iqbal/Twombly* necessarily implies that the simplified Form 18 standard is no longer sufficient for a

9

complaint to survive a motion to dismiss under Rule 12(b)(6). *Id.* at 1009-10. Now, the complaint must identify the defendant's products which allegedly infringe, describe the alleged infringement, and "relate factual assertions to the pertinent claims" of the patent at issue. *Id.* at 1011.

Here, Defendants contend that NovaPlast's direct infringement claims regarding each of the Accused Products fail to meet the plausibility requirements. The Complaint, they say, (1) fails to identify the specific claim of the '213 Patent that the Accused Products infringe and (2) fails to relate features of the Accused Products to each element of at least one asserted claim. (DE 10 at 8-9). Defendant submits that NovaPlast merely quotes the claims language of the '213 Patent without asserting any facts as to how or why the Accused Products contains the infringing features. (DE 22 at 6-7).

In support, Defendants cite decisions from district courts within the Third Circuit holding quotation of the claim language without relating it to facts concerning the accused products is insufficient to state a plausible claim of direct infringement. Thus, in *North Star Innovations, Inc. v. Micron Technology, Inc.*, the United States District Court for the District of Delaware held that "a patentee cannot meet its obligation to assert a plausible claim of infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element." No.17-506, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *report and recommendation adopted*, No. 17-506, 2018 WL 11182741 (D. Del. Jan. 3, 2018). In that court's view's, such an allegation "amounts to little more than a conclusory statement that 'Your product infringes my patent claim.'" *Id.*  Therefore, the court concluded, "[t]here needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so." *Id.*; *see also Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016)

(dismissing the complaint because plaintiffs made "no attempt to relate any their factual assertions with any of the asserted claims.").

NovaPlast responds that its Complaint adequately pleads direct infringement because (1) the '213 Patent "includes only one independent claim, making it clear that at least this independent claim, claim 1, is asserted" and (2) the Complaint "describes, in detail, the features of the two accused products" and "alleges that the accused products, when in use, meet each and every element of at least one claim of the Patent-In-Suit." (DE 18 at 6-8).

In that connection, NovaPlast relies on *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). There, the Federal Circuit held that a complaint plausibly alleged direct infringement under *Iqbal/Twombly* where (1) the matter involved "a simple technology"; (2) "[t]he asserted patents, which were attached to the complaint, consist[ed] of only four independent claims"; and (3) "[t]he complaint specifically identified the three accused products – by name and by attaching photos of the product packing as exhibits – and alleged that the accused products meet 'each and every element of at least one claim of the [relevant] Patent, either literally or equivalently.'" *Disc Disease*, 888 F.3d at 1260. The Court concluded that those "disclosures and allegations are enough to provide [the defendant] fair notice of infringement of the asserted patents." *Id.*

Relying on *Disc Disease*, a court in this District has held that a complaint sufficiently pleaded direct infringement where (1) it named the accused product; (2) in each count, it "describe[ed] the alleged infringement"; and (3) identifie[d] how [the accused] product infringe[d] on every element of at least one claim in each of [the plaintiff's] patents." *Nasdaq, Inc. v. IEX Grp., Inc.*, 2019 WL 102408, at *9 (D.N.J. Jan. 4, 2019); *see also Batkinoff v. Church & Dwight Co., Inc.*, 2020 WL 1527957, at *8 (D.N.J. Mar. 31, 2020) (noting that a "complaint must allege that the accused product infringes on 'each and every element of at least of claim' of the plaintiff's patents 'either literally or equivalently.'") (quoting *Disc disease*, 888 F.3d at 1260). NovaPlast also cites to

11

other district courts within the Third Circuit that applied *Disc Disease* to uphold allegations of direct infringement. *See Promos Techs., Inc. v. Samsung Elecs. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018) ("Here, Plaintiff has specifically identified K4B2G0846D-HCH9 2 Gb DDR3 SDRAM as the infringing product and alleges that it practices each limitation of at least one claim in the '492, '559 and '201 patents. Therefore, Plaintiff has sufficiently pled a claim of patent infringement for the K4B2G0846D-HCH9 2 Gb DDR3 SDRAM."); *AgroFresh Inc. v. Hazel Techs., Inc.*, No. 18-1486, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) ("Here, AgroFresh's Complaint identifies Defendant's accused product, Hazel CA, and the specific claims in the Daly 1 Patent (claims 1 and 6) and Daly 2 Patent (claim 1) that Defendant allegedly infringes, and the Complaint also states how Hazel CA purportedly infringes those claims.").

As explained above, the Rule 12(b)(6) analysis is governed by local Third Circuit law. *See C&F Packing Co.*, 224 F.3d at 1306. Relying on Supreme Court precedent, the Third Circuit has made it clear that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Phillips*, 515 F.3d at 232. Relying on such precedent, this District Court in *Robern* held that a complaint alleging patent infringement must "relate factual assertions to the pertinent claims" of the patent-in-suit. 206 F. Supp. 3d at 1011. Without such facts relating the features of the accused products to the patent claims, there is no *showing* of an entitlement to relief. *See id.*

Here, the Complaint purports to describe the Accused Products by parroting – and in some instances directly copying – the claims language of the '213 Patent. (*Compare* Compl. ¶¶ 25-27, 29-20, *with* Compl. Ex. 3 at 36). But there are no allegations that *relate* the quoted claims language to the Accused Products in a factual manner. The allegations in this Complaint are tantamount to a declaration that "The '213 Patent claims thus-and-so, and the Accused Products directly infringe it." That falls short of a factual "showing" of

12

entitlement to relief. *See Phillips*, 515 F.3d at 232. Therefore, I find the Complaint fails to state a plausible claim of direct infringement.

Accordingly, I find that NovaPlast's reliance on *Disc Disease* is misplaced. In that case – and in the subsequent cases relying on it – the complaint alleged factually that the accused products met "each and every element of at least one claim." 888 F.3d at 1260. Here, the Complaint alleges in a conclusory manner that the Accused Products "meet[] the limitations of one or more claims of the '213 Patent." (Compl. ¶¶45, 50) It does not go through each limitation of claim 1. (*Compare* Compl. ¶¶ 25-27, 29-20, *with* Compl. Ex. 3 at 36). For example, the Complaint does not allege factually that the Accused Products have a proximal end that is "formed opposite the distal end," or that the Accused Products have a "first longitudinal edge and second longitudinal edge further defining the longitudinal opening." (*Compare* Compl. ¶¶ 25-27, 29-20, *with* Compl. Ex. 3 at 36). Thus, the Complaint fails to allege factually that each and every element of at least one claim is met.

I therefore find that the Complaint fails to allege a direct infringement claim.

Looking ahead, NovaPlast has attached a proposed First Amended Complaint which incorporates the cease-and-desist letters it sent Defendants prior to this action. Those letters included a claim chart labeling the parts of the Accused Products that correspond to the quoted claims language. (DE 18-2 at 8). The body of the First Amended Complaint, however, remains unchanged for purposes of the above analysis. (DE 18-2 at 4-6). Should NovaPlast choose to move for leave to file an amended complaint in accordance with Federal Rule Civil Procedure 15(a)(2), I urge it to redraft the complaint so as to incorporate the necessary allegations, rather than task the reader with gleaning them from attachments.

### c. Remaining Claims

Because the Complaint fails to plausibly plead direct infringement, NovaPlast's claims for inducement and willful infringement must also fail.

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("'Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.' There can be no inducement or contributory infringement without an underlying act of direct infringement." (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed.Cir.1993)); *Otsuka Pharm. Co. v. Zydus Pharm. USA*, 151 F. Supp. 3d 515, 520 (D.N.J. 2015) ("In order to state a claim for inducement, the patent owner must therefore allege 'direct infringement, and that the alleged infringer 'knowingly induced infringement and possessed specific intent to encourage another's infringement. In other words, Otsuka's theory of induced infringement will be plausible 'if, but only if,' Otsuka alleges 'direct infringement . . .'") (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed.Cir.2010)); 35 U.S.C. § 284 (providing for increased damages once infringement has been established).

### III. Conclusion

For the reasons set forth above, I will grant Defendants' motion (DE 9) to dismiss the complaint, without prejudice to the submission, within 30 days, of a properly supported motion to amend the complaint.

An appropriate order follows.

Dated: February 3, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**