UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NOVAPLAST CORPORATION,**<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**INPLANT, LLC, and**<br>**PROXIMATE CONCEPTS, LLC**<br><br>　　　　　Defendants. | Civ. No. 20-7396 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　　　This matter comes before the Court on the motion (DE 30) of Defendants Inplant, LLC ("Inplant") and Proximate Concepts, LLC ("Proximate") to dismiss the First Amended Complaint (DE 29) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff NovaPlast Corporation ("NovaPlast") asserts claims under federal law for direct patent infringement, indirect patent infringement, and willful patent infringement under 35 U.S.C. § 271 *et seq*.

　　　　For the reasons stated herein, I will deny Defendants' motion to dismiss.

**I.　　Summary**[1]

　　　　The facts alleged in the Amended Complaint are accepted as true for purposes of this motion.[2] NovaPlast is the owner of U.S. Patent No. 10,104,213

---

[1]　　Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

　　　　"DE" = Docket entry number in this case.

　　　　"Compl." = NovaPlast's initial Complaint (DE 1)

　　　　"Am. Compl." = NovaPlast's First Amended Complaint (DE 29)

[2]　　A more detailed factual background can be found in my prior opinion dismissing the original complaint. (*See* DE 24.)

1

("the '213 Patent" or "the Patent-In-Suit"), entitled "Prosthetic implant delivery device and method." (Am. Compl. ¶16, Ex. 3.) The '213 Patent was filed on December 29, 2015 and issued on October 23, 2018. (Am. Compl. ¶17, Ex. 3.) The Patent contains the following claims:

> **1.** A delivery system adapted to facilitate insertion of a prosthetic implant through a surgical opening, the system comprising:
>
> a flexible elongated member defining a proximal end and a distal end, the proximal end, formed opposite the distal end and defining a closed end, the distal end defining a longitudinal opening;
>
> the distal end including a first longitudinal edge and a second longitudinal edge, the first longitudinal edge and second longitudinal edge further defining the longitudinal opening, at least one first fastener formed on the elongated member adjacent the first longitudinal edge, and a second fastener formed on the elongated member adjacent the second longitudinal edge;
>
> the second fastener matingly engage with the at least first fastener to close the longitudinal opening, whereby a predetermined size distal opening is formed based on the engagement of the second listener with the at least one first fastener, the distal opening sized to allow the prosthetic implant to be urged therethrough.
>
> **2.** The delivery system of claim **1**, wherein a plurality of first fasteners is formed on the elongated member adjacent the first longitudinal edge.
>
> **3.** The delivery system of claim **2**, wherein the mesh material defines a graded mesh, wherein the distal end portion is less expandable than the proximal end portion.
>
> **4.** The delivery system of claim **1**, wherein the flexible elongated member defines an expandable mesh material.
>
> **5.** The delivery system of claim **1**, each of the at least one first, fastener further comprising a channel, the second fastener defining a shoulder, the shoulder adapted to be received within and secured with the channel of at least one of the first fasteners.
>
> **6.** The delivery system of claim **1**, each of the at least one first fastener further comprising at least one receiving slot, the second

> fastener defining at least one tab, the at least one tab adapted to be inserted into and secured with the at least one receiving slot.
>
> **7.** The delivery system of claim **1**, each of the at least one first fastener comprising at least one attaching unit, the second fastener defining at least one closing unit, the at least one closing unit adapted to be inserted into and secured with the at least one attaching unit.
>
> **8.** The delivery system of claim **1**, the at least one first fasteners defining a proximal end and a distal end; the second fastener defining a proximal end and a distal end, the proximal end of the at least one first fasteners being a first distance from the proximal end of the second fastener, the distal end of the at least one first fasteners being a second distance from the distal end of the second fastener, the first distance being greater than the second distance.

(Am. Compl. Ex. 3 at 40.)

The Amended Complaint alleges that Inplant "has manufactured, sold, or offered for sale an implant funnel for breast augmentation surgery procedures" ("Accused Product 1"), displayed in Exhibit 1, and "is manufacturing selling, or offering for sale an implant funnel for breast augmentation surgery procedures" ("Accused Product 2"), displayed in Exhibit 2. (Am. Compl. ¶¶5-6, Ex. 1-2.) Further, the Amended Complaint claims that Proximate "has manufactured, sold, or offered for sale the Accused Products through the United States and in New Jersey." (Am. Compl. ¶9.)

Accused Product 1 is marked with U.S. Patent No. 9,925,028 ("the '028 Patent"), entitled "device for the delivery of a prosthetic implant and method of use thereof." (Am. Compl. ¶20.) On September 26, 2018, NovaPlast's counsel mailed Defendants a cease-and-desist letter, which included NovaPlast's yet to be issued claim (now the '213 Patent), along with a claim chart analyzing how Accused Product 1 purportedly infringed that claim. (*See* Am. Compl. ¶21; Ex. 6.)

After receiving this letter, Defendants created and began to sell Accused Product 2, marked with the '028 Patent and U.S. Patent No. 10,575,936 ("the '936 Patent"), entitled "device for the delivery of a prosthetic implant and

3

method of use thereof." (Am. Compl. ¶¶22-23.)[3] In response, on November 14, 2019, NovaPlast's counsel mailed another letter to Defendants expressing NovaPlast's opinion that Accused Product 2 infringed the '213 Patent. (*See* Am. Compl. ¶¶58-59, Ex. 7.) Similarly, this correspondence included a claim chart analyzing the manner in which Accused Product 2 allegedly infringed the '213 Patent. (*See* Am. Compl. Ex. 7.)

Accused Product 1 is alleged to include "a flexible elongated member defining a proximal end and a distal end, where the proximal end defines a closed end, and the distal end defines longitudinal opening." (Am. Compl. ¶29.) Additionally:

> The distal end of Accused Product 1 includes a first longitudinal edge and a second longitudinal edge and at least one first fastener formed on the elongated member adjacent the first longitudinal edge, and a second fastener formed on the elongated member adjacent the second longitudinal edge; the second fastener matingly engages with the at least first fastener to close the longitudinal opening, whereby a predetermined size distal opening is formed based on the engagement of the second listener with the at least one first fastener, the distal opening sized to allow the prosthetic implant to be urged therethrough.

(Am. Compl. ¶30.)

Accused Product 2 is similarly alleged to include "a flexible elongated member defining a proximal end and a distal end where the proximal end defines a closed end," and "the distal end is manufactured and sold with a closed distal end portion with a perforation to enable removal of the closed distal end portion to define a longitudinal opening to be suitable for use." (Am. Compl. ¶33.) When Accused Product 2's "closed distal end with perforation is removed, the distal end "includes a first longitudinal edge and a section longitudinal edge and at least one first fastener formed on the elongated member adjacent the first longitudinal edge, and a second fastener formed on

---

[3]   Both the '028 Patent and the '036 Patent are assigned to Proximate. (Am. Compl. ¶ 24.)

the elongated member adjacent the second longitudinal edge." (Am. Compl. ¶34.) Additionally,

> the second fastener matingly engages with the at least first fastener to close the longitudinal opening, whereby a predetermined size distal opening is formed based on the engagement of the second listener with the at least one first fastener, the distal opening sized to allow the prosthetic implant to be urged therethrough.

(*Id.*).

NovaPlast asserts two counts of patent infringement.

Count I alleges that Accused Product 1 infringes the '213 Patent. (Am. Compl. ¶¶66-70.) NovaPlast asserts the following: (1) "Accused Product 1 meets the limitations of one or more claims of the '213 Patent either literally or under the doctrine of equivalents"; (2) "Defendants, either individually or collectively, by way of their manufacturing, sale, and offering for sale of Accused Product 1 have directly infringed the '213 Patent"; (3) "Defendants' infringement of the '213 Patent is willful in that Defendants were aware of the '213 Patent, that Defendant have no good faith belief that Accused Product 1 does not infringe one or more claims of the '213 Patent, and Defendants have no good faith belief that the '213 Patent is invalid or unenforceable"; and (4) "NovaPlast has suffered and will continue to suffer damages in an amount yet to be determined and irreparable injury as a result of Defendants' infringement of the '213 Patent." (Am. Compl. ¶¶66-70.)

Count II alleges that Accused Product 2 infringes the '213 Patent. (Am. Compl. ¶¶71-76.) NovaPlast asserts the following: (1) "Accused Product 2 when configured for use meets the limitations of one or more of the '213 Patent either literally or under the doctrine of equivalents"; (2) "Defendants, either individually or collectively, by way of their manufacturing, sale, and offering for sale of Accused Product 2 have directly infringed the '213 Patent, and continue to do so"; (3) "Defendants, either individually or collectively, by way of instructions for use of Accused Product 2, have indirectly infringed the '213 Patent by knowingly inducing others to directly infringe one or more claims of

the '213 Patent, and continue to do so"; (4) "Defendants' direct and indirect infringement of the '213 Patent is willful in that Defendants were aware of the '213 Patent, that Defendants have no good faith belief that Accused Product 1 does not infringe one or more claims of the '213 Patent, and Defendants have no good faith belief that the '213 Patent is invalid or unenforceable"; and (5) "NovaPlast has suffered and will continue to suffer damages in an amount yet to be determined and irreparable injury as a result of Defendants' infringement of the '213 Patent." (Am. Compl. ¶¶71-76.)

NovaPlast seeks damages and costs, as well as declaratory and injunctive relief.

## II. Discussion

### a. Legal standard[4]

Generally, district courts adjudicating patent cases apply the substantive law of the Federal Circuit where the matter "is intimately involved with the substance of patent laws." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (internal quotations omitted). The standard governing grant or denial of a Rule 12(b)(6) motion, however, "is a purely procedural question not pertaining to patent law," to which this court, and the Federal Circuit on review, applies the rule of the regional circuit. *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000); *see also Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018) ("We review procedural issues,

---

[4] At the outset, this Court rejects NovaPlast's contention that Defendants waived their right to move for dismissal under Federal Rule of Civil Procedure 12(b)(6) by consenting to NovaPlast's motion for leave to amend the original complaint. (*See* DE 31 at 10.) Parties do not waive their "right to contest the sufficiency of a complaint when they fail to oppose a motion to amend." *Warren v. Fisher*, No. CIV.A.10-5343 JBS, 2013 WL 1164492, at *6 (D.N.J. Mar. 19, 2013) (citing *Monaco v. City of Camden*, 366 F. App'x 330, 334 n.3 (3d Cir. 2010)). Accordingly, I will analyze Defendants' motion to dismiss on the merits.

including the grant of a motion to dismiss, according to the law of the respective regional circuit.")

In *Robern, Inc. v. Glasscrafters, Inc.*, this Court held that the *Iqbal/Twombly* standard applies to complaints alleging patent infringement. 206 F. Supp. 3d 1005, 1010 (D.N.J. 2016). The *Robern* court explained that both the Supreme Court and the Third Circuit have held that the *Iqbal/Twombly* pleading standard applies in all civil cases and, since "the abrogation of Rule 84 and Form 18, there is no longer any credible conflict between Supreme Court precedent and Form 18." *Id.*[5]

Those standards are familiar and well-established. Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Therefore, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

Facial plausibility is found "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a

---

[5] The reference is to former Federal Rule of Civil Procedure 84 (abrogated eff. Dec. 1, 2015) and patent pleading Form 18.

7

probability requirement … it asks for more than a sheer possibility." *Id.* (internal quotations omitted).

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Defendants, as the moving party, bear the burden of demonstrating that no claim has been stated. *Animal Science Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). On a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. A court, however, may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F. 3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Therefore, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on such documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document … the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). Accordingly,

I may consider exhibits such as the cited patents and the cease-and-desist letters, which are attached to and are the very foundation of the complaint.

### b. Direct Patent Infringement

In my prior opinion dismissing the original complaint, I established that claims for direct patent infringement are governed by 35 U.S.C. § 271(a), which provides as follows: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). To prove direct infringement, NovaPlast, as holders of the '213 Patent, "must either point to specific instances of direct infringement or show that the [Accused Products] necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Accordingly, NovaPlast must identify the Defendants' products which allegedly infringe the '213 Patent, describe the alleged infringement, and "relate factual assertions to the pertinent claims" of the '213 Patent. *Robern*, 206 F. Supp. 3d. at 1011.

In dismissing the original complaint, I observed that the complaint "describe[d] the Accused Products by parroting – and in some instances directly copying – the claims language of the '213 Patent." (DE 24 at 12 (*compare* Compl. ¶¶ 25-27, 29-20, *with* Compl. Ex. 3 at 36).) I also noted that NovaPlast's complaint was bereft of allegations relating "the quoted claims language to the Accused Products in a factual manner." (DE 24 at 12.)

The Amended Complaint attempts to rectify these deficiencies, in part by including copies of the "claim charts" that NovaPlast's counsel sent to Defendants,[6] which allegedly establish that the Accused Products infringe the '213 Patent. (Am. Compl. ¶¶44, 59.) Further, for each Accused Product, the Amended Complaint provides additional factual allegations supplementing the claim charts and articulating the basis on which NovaPlast believes the

---

6   *See* Am. Compl. ¶¶ 44, 59, Exs. 6, 7.

Accused Products infringe particular elements of the '213 Patent. (Am. Compl. ¶¶ 44-55, 59-64.)

Here, as in its first motion to dismiss, Defendants argue that the Amended Complaint fails to state direct infringement claims under *Iqbal/Twombly* because NovaPlast has not related "features of Accused Product 1 and Accused Product 2" to the '213 Patent elements. (DE 30-1 at 7; *see also Robern*, 206 F. Supp. 3d at 1011; *North Star Innovations, Inc. v. Micron Tech., Inc.*, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (holding that under the *Twombly/Iqbal* standard, there "needs to be *some facts* alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting … that it is so.") (emphasis in original); *Bot M8 LLC v. Sony Corp. of Am.*, No. 2020-2218, 2021 WL 2932690, at *7 (Fed. Cir. July 13, 2021) ("[Reciting the claim elements and merely concluding the accused product has those elements is insufficient.")) Defendants additionally characterize NovaPlast's claim charts as a mere "a hand-waving exercise that uses arrows in a confusing and indefinite manner," and which fails to factually connect '213 Patent claim elements to the Accused Products. (DE 30-1 at 13; see also *id.* at 15.)

NovaPlast, on the other hand, contends that the Amended Complaint sufficiently addressed this Court's concerns by including "(1) photographs of the Accused Products; and (2) indications on the respective photographs where each claim limitation is met." (DE 31 at 4-5.) According to NovaPlast, the "level of granularity" argued for by Defendants "is not supported by precedent, statute, the Local Civil Rules, or basic common sense," which only requires that NovaPlast puts Defendants "on notice as to which of their activities are accused of direct infringement." (DE 31 at 4-5.)

NovaPlast has cured the deficiencies I identified in my prior opinion. I find that the allegations in the Amended Complaint—including the provided claim charts—(1) give Defendants fair notice of each of NovaPlast's claims and the grounds upon which it rests; and (2) provides "factual content that allows

10

the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." *Nasdaq, Inc. v. IEX Grp., Inc.*, No. CV 18-3014-BRM-DEA, 2019 WL 102408, at *9 (D.N.J. Jan. 4, 2019) (citations omitted).

The Amended Complaint includes a claim chart for Accused Product 1 and 2. Accused Product 1's claim chart consists of (1) a photograph of the device, (2) which is labeled with several numbered arrows, (3) and the '213 Patent claim language. (DE 29 at 8.) The '213 Patent claim language in the claim chart is annotated with the same numbers as the arrows in the Accused Product 1 photograph, which is presumably intended to be read together with the numbered arrows. (DE 29 at 8.)

Similarly, Accused Product 2's claim chart has three arrows labeled: (1) "Closed proximal end"; (2) "First and second edges, and fasteners"; and (3) the "Open distal end, when "cap" removed as instructed." (DE 29 at 10.)  Like the claim chart for Accused Product 1, Accused Product 2's claim chart also includes the '213 Patent claim language, although the claim language in this chart is not annotated in the same manner as Accused Product 1's claim chart (DE 29 at 10.)

Moreover, both claim charts are supported by new factual allegations asserting that: (1) each Accused Product "meets each and every limitation of at least claim 1 of the Patent-in-Suit as shown in the claim chart"; and (2) each numbered/labeled arrow in the claim chart "represent[s]" a specific element of the '213 Patent claim (DE 29 ¶¶ 45-54, 60-65.)[7] The language identifying each allegedly infringed claim element is copied from the '213 Patent claims language.

---

[7]     For example, with respect to Accused Product 1, the Amended Complaint alleges that the arrow "labeled '1' … represents '[a] delivery system adapted to facilitate insertion of a prosthetic implant through a surgical opening,' which reflects the first limitation of claim 1 of the Patent-in-Suit." Am. Compl. ¶ 46. Similarly, for Accused Product 2, the amended complaint alleges that the feature labeled "Closed proximal end" represents "'a flexible elongated member defining a proximal end,' which reflects the second limitation of claim 1 of the Patent-in-Suit. Am. Compl. ¶ 62.

11

If the patented invention were an electronic device or a medication, then a photograph with arrows might well fall short of the *Twombly/Iqbal* standard. This device, however, is a physical apparatus—it may be viewed as a refinement or improvement of the basic concept of a funnel—and the claims largely relate to the physical configuration of the device. A visual comparison, in such a case, may provide a sufficient factual basis for the claims of infringement. *See generally North Star Innovations, Inc., Inc.*, 2017 WL 5501489, at *2 ("Some patents and patent claims may require the patentee to provide more detail than others. The Court can imagine that as to some types of straightforward apparatus claims, for example, simply setting out what the patent claims require and then reproducing a picture of an accused product (perhaps with a little explanation of what is depicted) might be all that is needed.").

The new factual allegations and the claim charts in the Amended Complaint (1) include the '213 Patent claim language, (2) provide a photograph of the Accused Products, and (3) identify with arrows and labels the specific product features of the Accused Products which allegedly infringe the '213 Patent elements. That is enough to sufficiently allege a claim for direct infringement. The Amended Complaint provide each Defendant with "reasonable notice of the specific way it is allegedly infringing." *Nasdaq, Inc.*, 2019 WL 102408, at *9.

Defendants' motion to dismiss NovaPlast's direct infringement claims is therefore denied.

### c. Indirect Patent Infringement

Title 35, U.S. Code, Section 271(b), states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Therefore, to establish a claim for indirect patent infringement, NovaPlast "must allege direct infringement, and that that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *All Weather Armour, LLC v. Art of Gutter, Inc.*, No. CV 19-17150,

2020 WL 9720067, at *2 (D.N.J. June 23, 2020) (citing *Otsuka Pharm. Co, Ltd. v. Zydus Pharm. USA*, 151 F. Supp. 3d 515, 520 (D.N.J. 2015)). Ultimately, the Amended Complaint is required to allege "facts plausibly showing that the [D]efendants specifically intended their customers to infringe the … patent[s] and knew that that the customer's acts constituted infringement." *Nasdaq, Inc.*, 2019 WL 102408, at *12 (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litigation.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

I have already found that NovaPlast has sufficiently alleged a claim for direct infringement as to Accused Product 2. To allege an indirect infringement claim, NovaPlast must allege in addition that a defendant knowingly induced that infringement of the '213 Patent and possessed specific intent to encourage that infringement.

Defendants offers three primary reasons that the Amended Complaint does not state an indirect infringement claim. First, the Amended Complaint lacks allegations of "any third-party end user of Accused Product 2 directly infring[ing] any claim of the '213 Patent." (DE 30-1 at 23 (citing *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. CIV .A. 14-502 JLL, 2014 WL 3345618, at *2 (D.N.J. July 7, 2014)). Second, NovaPlast has not alleged that the Defendants *knew* that users of Accused Product 2 would infringe the '213 Patent. (DE 30-1 at 25 (citing Am. Compl. ¶ 22).) Third, the Amended Complaint lacks facts supporting "an allegation that Defendants specifically intended for customers of Accused Product 2 to infringe the '213 Patent." (DE 30-1 at 25-26; *see also Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, No. 19-10485, 2020 WL 3964969, at *6 (E.D. Mich. July 13, 2020); *Zoetis LLC. V. Roadrunner Pharmacy, Inc.*, 2016 WL 755622, at *5 (D.N.J. Feb. 25, 2016); *Straight Path IP Grp. Inc.*, 2014 WL 3345618, at *2, *3.)

NovaPlast responds that it has sufficiently alleged an indirect infringement claim because Defendants were on notice of the '213 Patent but still intended for users to take Accused Product 2 and "configure it so as to create a device Defendants knew to be infringing." (DE 31 at 7 (citing Am.

13

Compl. ¶¶ 33-41, 72-74).) NovaPlast cites this Court's decision in *The Green Pet Shop Enterprises, LLC v. Telebrands Corp.*, No. 17-6179, 2018 WL 547544, at *2 (D.N.J. Jan 24, 2018), where Judge Chesler found that the plaintiff sufficiently pled indirect infringement based, in part, on allegations that the defendant sold the allegedly infringing product after receiving "a cease-and-desist letter notifying it in detail of the basis for the patent infringement allegations." (DE 31 at 7-8.) Judge Chesler reasoned that it was "plausible to infer that [Defendant] knew that the customers to whom it sold the accused product were very likely to use their purchase and thereby infringe." *Green Pet Shop Enterprises*, 2018 WL 547544, at *2.

Here, NovaPlast has plausibly stated a claim for indirect infringement in relation to Accused Product 2. The Amended Complaint alleges that before the Defendants manufactured and sold Accused Product 2, NovaPlast sent Defendants a cease-and-desist letter, on November 14, 2019, articulating its "opinion that Accused Product 2 infringed one or more claims of the Patent-in Suit." (Am. Compl. ¶¶ 58, Ex. 7). This letter not only includes the previously discussed Accused Product 2 claim chart, but also articulates NovaPlast's opinion that the Defendants had been aware of the '213 Patent prior to the manufacture of Accused Product 2. (*See* Am. Compl. ¶¶ 59, Ex. 7). Despite this notice from NovaPlast, the Amended Complaint alleges that Defendants still sold Accused Product 2 and provided written instructions for customers on removing "the perforated distal end to create a distal opening sized to allow the prosthetic implant to be urged therethrough," infringing on the '213 Patent. (*See* Am. Compl. at ¶¶ 36-37, Ex. 5.)

Like the Court in *Green Pet Shop*, I find it plausible that, as of the sending of the cease-and-desist letter on November 14, 2019, Defendants knew about both the '213 Patent and NovaPlast's opinion that Accused Product 2 infringed that patent. *See Green Pet Shop Enterprises*, 2018 WL 547544, at *2.

At a minimum, they were knowingly proceeding at risk. [8] Moreover, it is no more than a common sense inference that Defendants knew and intended that purchasers of Accused Product 2 would use the product, follow the written instructions, and thereby infringe the '213 Patent. NovaPlast has alleged sufficient facts to support the inference that Defendants had the specific intent to induce infringement of the '213 Patent.

Accordingly, Defendants' motion to dismiss the indirect infringement component of Count 2 is denied.

### d. Willful Patent Infringement

Finally, under Section 284 of the Patent Act, once infringement has been established, the Court has the discretion to award enhanced damages against infringers. *Nasdaq, Inc.*, 2019 WL 102408, at *13 (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016)). To sustain an allegation of willful infringement, NovaPlast "must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the ['213 Patent]; (2) after acquiring that knowledge, it infringed the ['213 Patent]; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the ['213 Patent]." *Batinkoff v. Church & Dwight Co.*, No. 318CV16388BRMLHG, 2020 WL 1527957, at *19 (D.N.J. Mar. 31, 2020) (citations omitted); *see also Nasdaq, Inc.*, 2019 WL 102408, at *14 ("Therefore, 'where a complaint permits an inference that the defendant was on notice of the potential infringement and still continued its infringement, the plaintiff has pled a plausible claim of willful infringement.'" (citing *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018)).

Defendants argue that NovaPlast's willful infringement claims are deficient because the Amended Complaint lacks allegations of "specific egregious conduct, which … is a condition precedent to pleading a claim of

---

[8] Of course, an indirect infringement claim cannot be conjured out of thin air by the mere sending of a cease-and-desist letter. Here, however, I have found that that direct infringement has been plausibly alleged.

15

willful infringement."9 Specifically, Defendants note that it (1) developed, patented, and brought Accused Product 1 to market before the issuance of the '213 Patent and NovaPlast's Accused Product 1 cease-and-desist letter; and (2) that it only developed Accused Product 2 in response to that cease-and-desist letter—which does not support an inference of egregiousness. (DE 30-1 at 34; *see also* DE 30-1 at Ex. 6.) Finally, Defendants assert that NovaPlast's factual allegations of knowledge—that Defendants knew about the '213 Patent and NovaPlast's belief that they were infringing before this action was initiated—are not sufficient to establish a plausible claim for willful infringement. (DE 30-1 at 29-30; *see also Bioverativ Inc. v. CSL Behring LLC*, No. CV 17-914-RGA, 2020 WL 1332921, at *4 (D. Del. Mar. 23, 2020); *Signify N. Am. Corp. v. Axis Lighting Inc.*, No. 19CV5516 (DLC), 2020 WL 1048927, at *3 (S.D.N.Y. Mar. 4, 2020), *order amended on reconsideration*, No. 19CV5516 (DLC), 2020 WL 2079844 (S.D.N.Y. Apr. 30, 2020).

      In response, NovaPlast asks this Court again to rely on *Green Pet Shop*,10 in which this Court held that "the receipt of a detailed cease-and-desist letter, followed by continued infringement, makes plausible an inference of subjective willfulness." 2018 WL 547544, at 2. Like the plaintiff in *Green Pet Shop*, NovaPlast argues that Defendants received cease-and-desist letters articulating the basis of their infringement claims, yet Defendants continued to infringe the '213 Patent. (DE 31 at 8; *see also* Am. Compl. ¶ 21-22. 33-41, 56-58, 72-74.)

      I find that NovaPlast has sufficiently alleged willful infringement claims as to both Accused Product 1 and 2. Notably, courts in this District have held that a showing of "egregiousness," as such, is not necessary at the pleading stage. *See OANDA Corp. v. GAIN Cap. Holdings, Inc.*, No. 320CV05784BRMDEA,

---

9    DE 30-1 at 28; *see also Michigan Motor Techs. LLC*, 2020 WL 3964969, at *4 (citing *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-915, 2018 WL 620968, at *6 (D. Del. Jan. 30, 2018); *Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. Jul. 12, 2016), *report and recommendation adopted*, No. CV 15-871-LPS, 2016 WL 9307500 (D. Del. Dec. 22, 2016).

10    DE 31 at 9.

2021 WL 1186778, at *13 (D.N.J. Mar. 30, 2021) ("A showing of egregiousness of GAIN's alleged infringement is not necessary at the pleading stage."); *Nasdaq, Inc.*, 2019 WL 102408 at *39 ("[B]road allegations of willfulness without a specific showing of egregiousness have been enough to withstand a motion to dismiss.") Accordingly, to allege a willful infringement claim at the pleading stage, NovaPlast only needs to allege that Defendants were on notice of potential infringement of the '213 Patent and continued to infringe the patent. *OANDA Corp.*, 2021 WL 1186778, at *13; *Nasdaq, Inc.*, 2019 WL 102408 at *40; *Telebrands Corp. v. Everstar Merch. Co.*, No. 17-2878, 2018 WL 585765, at 21 (D.N.J. Jan. 29, 2018); *Depomed, Inc. v. Purdue Pharma L.P.*, No. 13-571, 2017 WL 438738, at *11 (D.N.J. Jan. 31, 2017).

    Attached to the Amended Complaint is a September 26, 2018 cease-and-desist letter from NovaPlast to Defendants, providing an analysis regarding how Accused Product 1 (marked with the '028 Patent) allegedly infringed the yet-to-be issued '213 Patent (issued on October 23, 2018).[11] Further, NovaPlast attached the Accused Product 2 cease-and-desist letter, dated on November 14, 2019 (over a year after the issuance of the '213 Patent), in which NovaPlast expresses that: (1) Accused Product 2 "*continues to be an infringement issue with respect to any sales of the re-designed product*"; (2) the Defendants were aware of the "'213 Patent *prior* to its re-design [of Accused Product 1]"; and (3) its belief that "*at this point*, … sales of both of [Defendants] original design and re-design make it liable for patent infringement." (Am. Compl. at Ex. 7.)

    Whether willfulness can ultimately be established remains an open question, of course, but it is adequately alleged. This Court finds that the Amended Complaint, supplemented by the attached cease-and-desist letters, has pled sufficient facts supporting the inference that Defendants should have

---

[11]    *See* Am. Compl. ¶¶ 17, 22, Ex. 6. The letter additionally highlighted that the filing date for the '028 Patent was made "nearly a full-year after the filing date for [the '213 Patent], and that Defendants' patent claims were likely to be found invalid in light of the '213 Patent if an *inter partes* review proceeding were instituted. (Am. Compl. at Ex. 7.)

known that Accused Products infringed the '213 Patent, but continued to infringe that patent. Consequently, Defendants' motion to dismiss NovaPlast's willful infringement claims is denied.

### III. Conclusion

For the reasons set forth above, I will deny Defendants' motion (DE 30) to dismiss the complaint.

An appropriate order follows.

Dated: December 6, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**